UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x   Case 7:19-cv-08262-VB
YISROEL BRUCK, individually and on behalf of
a class
Plaintiff,

Vs.

ABSOLUTE RESOLUTIONS INVESTMENTS, LLC and
FORSTER & GARBUS, LLP
Defendants.
-----------------------------------------------------------------x

# **PLAINTIFF YISROEL BRUCK'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**

**I.      INTRODUCTION**

Defendants Absolute Resolutions Investments, LLC ("ARI") and Forster & Garbus, LLC's ("F&G") (collectively "Defendants") motion to compel arbitration should be denied because they fail to support their motion with admissible evidence. ARI does not provide sufficient evidence that it has the right to compel arbitration against Plaintiff and does not even claim to have in its possession the contract it seeks to enforce.

The only agreement to arbitrate which has been produced is that supposedly between First Bankcard ("FB") and Plaintiff. See Doc 22-2 Affidavit of Scott Mayo employee of First National Bank of Omaha ("FNBO") ("Attached as Exhibit A is a true and correct copy of the Cardmember Agreement"). Surprisingly, in the collection action filed in the Supreme Court of Rockland County, a different employee of FNBO, Willie Weddle, swore that "the original agreement and documents evidencing the creation of [defendant's] Account is lost or destroyed." **See Exhibit A**

Even leaving aside that according to one FNBO affiant the agreement was lost or destroyed, FNBO does not specifically claim in its affidavit that it transferred its right to arbitrate to ARI. FNBO merely transferred the ability to receive payment from Plaintiff i.e., the receivable. One would think that if FNBO had transferred its right to arbitrate, it would have said so being that the affidavit was created for this litigation. Moreover, in its affidavit ARI does not claim to have any rights to enforce a contractual right to arbitrate it only claims to have a right to collect on the account.

In any event, the documents Defendants produces are incomplete and inadmissible hearsay because Defendants have failed to provide sufficient foundation testimony to overcome the evidentiary bar. For Example, the "Bill of Sale" (Doc. 22-9) references a "Forward Flow Debt Sale Agreement" dated March 28, 2018. Yet no such agreement is produced. Nor does FNBO even claim in the Bill of Sale to own the account. Rather, it states that the transfer is only to the extent

of its ownership. Further that document states that only the Receivables are being transferred; not the contractual right to arbitrate. The document also says the transfer is being made with no representations or warranties except those expressly made in the Forward Flow Debt Sale Agreement. Without seeing the Forward Flow Debt Sale Agreement it is impossible to know whether FNBO claimed to own this account and what representations or warranties it made related to the sale including any references to whether the contractual right to arbitrate was transferred.

In addition, even if the arbitration agreement applies, it requires each party to bear its own attorney fees and costs, regardless of which party prevails. See Doc. 22-3, page 9 of 11 ("Each party will bear the expense of the fees and costs of that party's own attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails.") Such a provision fundamentally conflicts with the congressional intent underlying the FDCPA which requires that a prevailing plaintiff be awarded his attorney's fees. Such an arbitration provision is unenforceable. *Nesbitt v. FCNH, Inc.*, 811 F.3d 371 (10th Cir. 2016); *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 468-469 (S.D.N.Y. 1997) ("the Court finds the governing law in this case to be as follows: contractual clauses purporting to mandate arbitration of statutory claims as a condition of employment are enforceable only to the extent that the arbitration preserves the substantive protections and remedies afforded by the statute.") Although the arbitration agreement has a severance clause, the Court should not sever the unenforceable terms in this contract and instead the entire arbitration clause should fail. For if not, it will create an incentive for drafters to include as many unfair terms as possible, without fear that including these terms will prevent enforcement of the agreement as a whole. Harlan M. Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625, 683 (1960) ("If severance is generally applied, employers can fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular

of its ownership. Further that document states that only the Receivables are being transferred; not the contractual right to arbitrate. The document also says the transfer is being made with no representations or warranties except those expressly made in the Forward Flow Debt Sale Agreement. Without seeing the Forward Flow Debt Sale Agreement it is impossible to know whether FNBO claimed to own this account and what representations or warranties it made related to the sale including any references to whether the contractual right to arbitrate was transferred.

In addition, even if the arbitration agreement applies, it requires each party to bear its own attorney fees and costs, regardless of which party prevails. See Doc. 22-3, page 9 of 11 ("Each party will bear the expense of the fees and costs of that party's own attorneys, experts, witnesses, documents and other expenses, regardless of which party prevails.") Such a provision fundamentally conflicts with the congressional intent underlying the FDCPA which requires that a prevailing plaintiff be awarded his attorney's fees. Such an arbitration provision is unenforceable. *Nesbitt v. FCNH, Inc.*, 811 F.3d 371 (10th Cir. 2016); *DeGaetano v. Smith Barney, Inc.*, 983 F. Supp. 459, 468-469 (S.D.N.Y. 1997) ("the Court finds the governing law in this case to be as follows: contractual clauses purporting to mandate arbitration of statutory claims as a condition of employment are enforceable only to the extent that the arbitration preserves the substantive protections and remedies afforded by the statute.") Although the arbitration agreement has a severance clause, the Court should not sever the unenforceable terms in this contract and instead the entire arbitration clause should fail. For if not, it will create an incentive for drafters to include as many unfair terms as possible, without fear that including these terms will prevent enforcement of the agreement as a whole. Harlan M. Blake, Employee Agreements Not to Compete, 73 Harv. L. Rev. 625, 683 (1960) ("If severance is generally applied, employers can fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular

case are not unreasonable. This smacks of having one's employee's cake, and eating it too.") The notes to the Restatement (Second) of Contracts provide, "a court will not aid a party who has taken advantage of his dominant bargaining power to extract from the other party a promise that is clearly so broad as to offend public policy by redrafting the agreement so as to make a part of the promise enforceable."

For these reasons, as explained in more detail below, the Court should deny Defendants' motion to compel arbitration.

## II. STATEMENT OF FACTS

**Procedural Background**

Plaintiff on behalf of himself and a proposed class of similarly situated individuals, sued Defendants for filing a collection complaint against him without meaningfully reviewing the complaint and for stating that Plaintiff's original creditor was FNBO. But Plaintiff had an account with FB not FNBO. Declaration of Yisroel Bruck ("Bruck Decl.") ¶¶10.

## III. ARGUMENT

**a- The Contractual Arbitration Clause Defendants seek to introduce is inadmissible for multiple reasons including that it is hearsay.**

Federal Rules of Evidence Rule 803 provides
The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness:
 (6) Records of a Regularly Conducted Activity. A record of an act, event, condition, opinion, or diagnosis if:
(A) the record was made at or near the time by--or from information transmitted by-- someone with knowledge;
(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
(C) making the record was a regular practice of that activity;
(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
(E) the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness.

Case 7:19-cv-08262-VB   Document 25   Filed 01/30/20   Page 5 of 11

The business record exception rests on the trustworthiness and reliability of such records. *Saks Int'l, Inc. v. M/V "Export Champion"*, 817 F.2d 1011, 1013 (2d Cir. 1987) ("principal precondition to admission of documents as business records ... is that the records have sufficient indicia of trustworthiness to be considered reliable") Defendants through an affidavit seek to introduce the supposed contractual arbitration agreement clause that Plaintiff supposedly entered into with FNBO. Mayo Affidavit ("May Aff" (Doc. 22-2) ¶¶7-8. But the affidavit along with the contract was created for this litigation and lacks trustworthiness ("AFFIDAVIT OF SCOT MAYO IN SUPPORT OF MOTION TO COMPEL ARBITARTION" dated January 15, 2020. FNBO likely provided the affidavit to ARI to preserve its business relationship not to provide the truth. A strong likelihood of improper motivation on the part of a witness can outweigh all other trustworthiness factors. *Anderson v. City of New York*, 657 F. Supp. 1571, 1579 (S.D.N.Y.1987). The FNBO affidavit was contradicted by a previous FNBO affidavit not created for litigation which said that the entire contract was "lost or destroyed." The affidavit saying that the contract is "lost or destroyed" is more credible. The Mayo affidavit lacks trustworthiness. *Phillips v. City of New York*, 871 F. Supp. 2d 200, 82 Fed. R. Serv. 3d 1352 (E.D. N.Y. 2012) (letter sent by City department about City's reasons for the revocation of arrestee's contractor licenses was not admissible under the business records exception in arrestee's § 1983 action for false arrest and malicious prosecution as the letter was created in anticipation of litigation); *Abascal v. Fleckenstein*, 820 F.3d 561, 566 (2d Cir. 2016) ("We find that the defendants have carried their burden of showing that the information and circumstances surrounding the Report's creation indicate a lack of trustworthiness.")

### b- Defendants' Motion to Compel Arbitration Should Be Denied Because Defendants Fail To Show That They Are Able to Enforce A Contractual Right to Arbitrate.

Leaving aside that there is no contractual right to arbitrate because the contract was lost or destroyed, the Supreme Court has repeatedly emphasized that "arbitration is a matter of contract and arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Granite Rock Co. v. Int'l Bhd. Of Teamsters*, 561 U.S. 287, 296 (2010). Although Defendant is correct that the Court has recognized "a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), there is an exception to this policy for questions of arbitrability. In other words, whether a particular dispute is subject to arbitration in the first place is "for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *AT & T Techn, Inc. v. Commmuns. Workers of Am.*, 475 U.S. 643, 649 (1986). As the party seeking to compel arbitration, Defendants bear "the burden to establish that a binding agreement was made and to prove the terms" of that agreement. *Dreyfuss v. eTelecare Global Solutions-U.S. Inc.*, 349 Fed. App'x 551, 555 (2d Cir. 2009) citing *Allied Sheet Metal Works, Inc. v. Kerby Saunders, Inc.,* 206 A.D.2d 166, 619 N.Y.S.2d 260, 263 (1st Dept. 1994) ("The party seeking to enforce a contract bears the burden to establish that a binding agreement was made and to prove the terms of the contract.")

### i. No Arbitration Agreement Exists Between Plaintiff and Defendants

Through its motion, Defendants seek to enforce a supposed arbitration agreement that it asserts was bought by ARI. Defendants do not dispute that they are not a signatory party to the

original arbitration agreement. Defendants thus do not, and cannot, deny that no arbitration agreement exists to which both Plaintiff and Defendants are signatories.

### ii. **Defendants Arguments Rely on a Nonexistent Arbitration Agreement with First Bankcard**

Defendants seem to be arguing that they may enforce the contract with the arbitration clause that Plaintiff entered into with FB. Yet, *Defendants have produced no "Account Agreement."* In seeking to side-step the fact that they failed to produce the agreement that it contends controls, Defendants rely on the Declarations of Mark Naiman and Scot Mayo and the exhibits attached thereto. One would think that if ARI had the agreement that it contends entitles it to compel arbitration it would have produced it. It did not produce it. Rather, Defendants rely on FNBO's affiant Scot Mayo which claims "Attached as Exhibit A is a true and correct copy of the Cardmember Agreement." But that statement is contradicted by another employee of FNBO named Willie Weddle who states "Affiant states that the original agreement and document evidencing the creation of this Account is lost or destroyed." **See Exhibit A** One couldn't be blamed for assuming that the agreement was created for this litigation but was lost or destroyed before this litigation.

There are no documents showing that Plaintiff opened an account with FNBO. The documents show that Plaintiff opened an account with FB. See Agreement (Doc. 22-3, Pg 2) ("This Cardmember Agreement together with the accompanying Rates and Terms Schedule ("Schedule") govern your account with First Bankcard (a division of First National Bank of Omaha)"). The provided statements and the agreement only reflect that Defendant had an account with FB not with FNBO. To establish that a debt buyer such as ARI has a right to compel arbitration contractually of a consumer's dispute, it must submit evidence in admissible form establishing that [the original creditor] had assigned its right to arbitrate to the debt buyer.

<20>
<20>
<20>
<20>

See, e.g., *Unifund CCR Partners v Youngman*, 89 AD3d 1377, 1377 [4th Dep't 2011]; Palisades Collection, LLC v Kedik, 67 AD3d 1330 [4th Dep't 2009].

    There is no evidence that the account was transferred from FB to FNBO. The Court should respect organizational forms, and it has not been shown that debt resulting from the FB account was transferred to FNBO. Rather, through admissible evidence it must be shown that the debt was transferred from FB to FNBO. To prove its contractual right to arbitrate this junk debt buyer (ARI) must prove that it has been assigned an account through tender of proper documentation specifically relating to the particular account at issue. *Citibank v. Martin*, 11 Misc. 3d 219, 226 (N.Y. Civ. Ct. 2005). A mere conclusory assertion of a fact, with no evidentiary basis, is insufficient. *Grullon v. City of New York*, 297 A.D.2d 261, 263 [1st Dept 2002]. When the affiant relies on documents, the documents relied on must be annexed. *Vermette v. Kenworth Truck Co., Div. of Paccar, Inc.*, 68 N.Y.2d 714, 717 [1986] (affidavit "which merely alleges in conclusory form that such proof exists but fails to tender it in opposition to the motion or to offer an excuse for such failure, was patently insufficient for that purpose.")

    Defendant disputes that the account was transferred from FB to FNBO to ARI and that the right to compel arbitration was transferred. Courts have required documentation proving that corporations have transferred rights to other companies even if they are part of the same family including the need to effectuate transfer rights. For example, when Citibank South Dakota merged and became Citibank in July 2011, with Citibank South Dakota ceasing to exist, evidence of a transfer of the account was necessary. See *Cach of Colo., L.L.C. v. Lazarovwsky*, 46 Misc.3d 1201(A), 2014 WL 7177430 (N.Y. Civ. Ct. Dec. 8, 2014); *LVNV Funding, L.L.C. v. Guest*, 953 N.Y.S.2d 550, 2012 WL 1957715 (N.Y. City Ct. May 29, 2012) (certificate of merger between prior creditors insufficient to show transfer of debt from one entity to the other). No

proper documents evidencing a chain of title from FB to ARI have been shown. The chain of title is incomplete because there is not a shred of evidence that the account was transferred from FB to FNBO. See *Centurion Capital Corp. v. Guarino*, 951 N.Y.S.2d 85, 2012 WL 1543286 (N.Y. Civ. Ct. Apr. 30, 2012).

### ii     Even if the documents produced were acceptable, they are incomplete and don't show a right to compel arbitration was transferred

The documents ARI produces are incomplete. The "Bill of Sale" (Doc. 22-9) references a "Forward Flow Debt Sale Agreement" dated March 28, 2018. Yet no such agreement is produced. FNBO does not even claim in the Bill of Sale to own the account. Rather, it states that the transfer is only to the extent of its ownership. Further that document states that only the Receivables are being transferred; not the contractual right to arbitrate. The document also says the transfer is being made with no representations or warranties except those expressly made in the Forward Flow Debt Sale Agreement. Without seeing the Forward Flow Debt Sale Agreement it is impossible to know whether FNBO claimed to own this account and what representations or warranties it made related to the sale including any references to the contractual right to arbitrate.

In a case similar to ours, in *Garcia v. Midland Funding, LLC*, Civil No. 15-6119-(RBK/KMW), 2017 WL 1807563 (D.N.J. May 5, 2017) the plaintiff brought a class action against Midland Funding for alleged violations of the FDCPA. In its motion to compel arbitration, Midland Funding attached an affidavit from a representative of Synchrony Bank swearing plaintiff's original account agreement contained an arbitration provision. *Id*. at *2. Midland Funding argued a "Forward Flow Receivables Purchase Agreement" fully conveyed Synchrony Bank's ownership of plaintiff's credit account to it, acquiring all rights to plaintiff's

account including the right to arbitration. *Id*. at *3 In response, plaintiff argued the Forward Flow Receivables Purchase Agreement conveyed only the accounts receivables, not the entire credit card accounts or the accounts agreement, and Synchrony Bank did not transfer all its rights associated with the account. *Id*.

The district court that found the agreement between Synchrony Bank and Midland Funding in Garcia "did not clearly convey the right to demand individual arbitration." *Id*. The district court focused on the language of the agreement providing separate definitions for "account" and "receivable" and found Midland Funding acquired the right to collect receivables but the agreement, on its face, did not convey the broad right to compel arbitration for "any dispute or claim" relating to plaintiff's account and denied Midland Funding's motion to compel arbitration. *Id*.  See also *Lester v. Portfolio Recovery Associates, LLC*, 96 U.C.C. Rep. Serv. 2d 226 (N.D. Ala. 2018),  ("At the end of the day, Koehler's declaration does not define "account," nor does it state that the intent of the parties was to convey to PRA all of Synchrony's rights and privileges under the credit agreement. The declaration also contradicts the Bill of Sale attached thereto, which purports to convey only "receivables." PRA has cited no evidence that the right to arbitrate was transferred, or that it was Synchrony's intent to transfer to PRA the right to arbitrate.")

ARI here attempts to invoke an arbitration agreement without having the right to do so as it has failed to provide the relevant Purchase and Sale Agreement between it and FNBO. Without this document the current acquisition rights are unclear and none of the documents including the Bill of Sale or any of the affidavits attached to ARI's, on their face, convey the right to compel arbitration.

## CONCLUSION

Defendants have failed to meet their burden to show Plaintiff agreed to arbitrate his FDCPA claims against Defendants. Defendants Motion to Compel Arbitration pursuant to an agreement between FB and Plaintiff should be denied.

Dated:

        Respectfully submitted,

        /s/ Shimshon Wexler
        Shimshon Wexler
        The Law Offices of Shimshon Wexler, PC
        216 West 104th St., #129
        New York, New York 10025
        Tel: (212)760-2400
        Fax: (917)512-6132
        swexleresq@gmail.com