UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X          Case No. 7:19-cv-08262
YISROEL BRUCK, individually and on
behalf of a class

                                                       **FIRST AMENDED CLASS
                                                       ACTION COMPLAINT**

                         Plaintiff,

      v.

FORSTER & GARBUS, LLP;
and ABSOLUTE RESOLUTIONS
INVESTMENTS, LLC

                         Defendants.
------------------------------------------------------X

       Yisroel Bruck ("Plaintiff") by and through his attorneys hereby amends his complaint and alleges as follows:

<h2 align="center"><u>INTRODUCTION</u></h2>

1. Plaintiff, on his own behalf and on behalf of the classes he seeks to represent, brings this action to secure redress for the deceptive acts and debt collection practices utilized by Forster & Garbus, LLP ("F&G") and Absolute Resolutions Investments, LLC ("ARI") (collectively the "Defendants") in connection with their attempts to collect alleged debts from the Plaintiff and others similarly situated.

2. Plaintiff alleges that Defendants' collection practices violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA").

3. The FDCPA broadly regulates communications in connection with debt collection; conduct which harasses, oppresses or abuses any debtor; any false, deceptive or misleading statements, in connection with the collection of a debt; prohibits unfair or unconscionable collection methods; and requires certain disclosures. 15 U.S.C. §§1692c 1692d, 1692e, 1692f, 1692g.

4.  The FDCPA is a strict liability statute which provides for actual or statutory damages upon the showing of a single violation. *See* <u>Bentley v Great Lakes Collection Bureau</u>, 6 F.3d 60, 62-63 (2d Cir. 1993).

## JURISDICTION AND VENUE

5.  This Court has jurisdiction over Plaintiff's FDCPA claim pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

6.  Venue and personal jurisdiction in this District are proper because:

    a.  The acts giving rise to this lawsuit occurred within this District; and

    b.  Defendants do business within this District.

## PARTIES

7.  Plaintiff, Yisroel Bruck, is an individual natural person who at all relevant times resided in the City of Suffern, County of Rockland, State of New York.

8.  Plaintiff is a "consumer" as that term is defined by 15 U.S.C. §1692a(3).

9.  Forster & Garbus, LLP is a New York limited liability partnership engaged in business of collecting consumer debts with its principal place of business located at 60 Motor Parkway Commack, NY 11725.

10. The principal purpose of F&G is the collection of debts using the mail and telephone.

11. F&G regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

12. F&G is licensed as a Debt Collection Agency with the NYC Department of Consumer Affairs.

13. F&G is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

14. Absolute Resolutions Investments, LLC is an Arizona Delaware limited liability company, with its principal place of business located at 8000 Norman Center Drive – Suite 350 Bloomington, MN 55437.

15. ARI is a purchaser of defaulted consumer debt.

16. ARI's business model is to pay less than ten cents on the dollar for a defaulted debt and then seek to collect the full amount.

17. Part of ARI's collection practices includes filing lawsuits against New York residents seeking to collect debts that ARI allegedly purchased after the debts went into default.

18. The principal purpose of ARI is the collection of debts using the mail and telephone.

19. Debt collection is the principal purpose of ARI's business.

20. ARI has no principal purpose other than the purchasing and collecting of defaulted debt.

21. The purchasing and collecting of defaulted debt are ARI's only business.

22. ARI exists solely for the purpose of purchasing and then seeking to collect defaulted debt.

23. ARI does not offer or extend credit, they only purchase defaulted debt and then attempt to collect said debt.

24. ARI's website describes the company as a buyer of defaulted consumer debt stating in relevant part, "Since its inception in 2001, Absolute Resolutions Corp. has specialized in the purchase and recovery of distressed consumer receivables…"
*See* https://absoluteresolutions.com/arc-story/ (last visited March 25, 2020).

25. ARI is licensed as a Debt Collection Agency with the NYC Department of Consumer Affairs.

26. ARI is a "debt collector" as that term is defined by 15 U.S.C. §1692a(6).

## FACTS

27. Sometime prior to September 1, 2018, Plaintiff allegedly incurred a financial obligation to First Bankcard related to a personal credit card issued by First Bankcard in the Plaintiff's name (the "Debt"). The Debt was given an account number by First Bankcard and the last four numbers of the account were 7421.

28. The Debt arose out of a transaction in which the money, property, insurance or services which were the subject of the transaction were primarily for personal, family or household purposes, namely fees emanating from a personal credit card account in the Plaintiff's name.

29. The personal credit card account with First Bankcard was not opened by Plaintiff for business purposes.

30. The personal credit card account with First Bankcard was not used by Plaintiff for business purposes.

31. Plaintiff's personal credit card account Debt to First Bankcard is a "debt" as defined by 15 U.S.C. §1692a(5).

32. First Bankcard is the Plaintiff's original "creditor" as that term is defined by the FDCPA.

33. The alleged Debt went into default because of non-payment.

34. After the alleged Debt went into default pursuant to the terms of the agreement creating the Debt the Debt was allegedly sold to ARI.

35. The Debt was in default when it was allegedly purchased by ARI.

36. ARI claims it purchased the defaulted Debt and is now the entity to whom the Debt is owed.

37. After ARI allegedly purchased the Debt they referred the Debt to F&G in order for F&G to attempt to collect the Debt.

38. Defendants contend that the Debt is past-due.

39. Defendants contend that the Debt is in default.

40. The Debt was past due at the time it was referred to F&G by ARI for collection.

41. The Debt was in default pursuant to the terms of the agreement creating the Debt at the time it was referred to F&G by ARI for collection.

42. At all times relevant hereto, Defendants acted in an attempt to collect the Debt.

43. On March 18, 2019, F&G, at the direction of ARI, mailed Plaintiff a letter (the "Letter"). *See* Doc 6-1, page 1 of 4.

44. The Letter was mailed to Plaintiff by F&G at the direction and request of ARI.

45. Defendants mailed Plaintiff the Letter as a part of their efforts to collect the Debt.

46. Plaintiff received the Letter in the mail.

47. Plaintiff read the Letter upon receipt of the letter in the mail.

48. The Letter was sent in connection with the collection of the Debt.

49. The Letter seeks to collect the Debt.

50. The Letter conveyed information regarding the Debt including the Balance, F&G Reference Number and a request for payment.

51. The Letter is a "communication" as that term is defined by 15 U.S.C. §1692a(2).

52. The Letter is the initial "communication" from Defendants to Plaintiff as that term is defined by 15 U.S.C. §1692a(2).

53. Defendants did not communicate with the Plaintiff in anyway prior to mailing the Letter.

54. The Letter states that the current creditor was ARI and that the account was originally owned by 1ST NATL BANK OF OMAHA.

55. The name of the original creditor was First Bankcard not First National Bank of Omaha.

56. When Plaintiff exercised his right as outlined in the Letter to dispute the Debt and to request information about the Debt including the name and address of the original creditor, F&G wrongly confirmed that the original creditor was First National Bank of Omaha. *See* Doc 6-1, page 3 of 4.

57. In an attempt to collect the Debt, F&G commenced an action ("Collection Action") against Plaintiff by filing a complaint  ("Collection Complaint") on May 9, 2019 in the Superior Court of the State of New York, County of Rockland entitled "Absolute Resolutions Investments, LLC v. Yisroel Bruck" and designated in that court by Index No. 033745/2019. *See* Doc 6-1, page 2 of 4.

58.  The Collection Complaint stated that the credit card account was originally owned by First National Bank of Omaha. *See* Doc 6-1, page 2 of 4.

59. The signature line of the Collection Complaint lists four attorneys' names.

60. By signing the Collection Complaint, the attorneys at F&G certified that they read the Collection Complaint and that, "to the best of their ... knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" that the complaint has merit.

61. The attorneys at F&G sign so many complaints that it is either physically impossible or so highly improbably that they read the Collection Complaint or made a sufficient inquiry from which to conclude that the factual allegations have evidentiary support. Therefore, F&G on behalf of made false representations to collect or attempt to collect the Debt.

62. The Consumer Financial Protection Bureau ("CFPB") filed a lawsuit against F&G for failing to meaningfully review debt complaints prior to filing them (the "CFPB Complaint"). *See* Exhibit A.

63. Pursuant to Federal Rule of Civil Procedure 10(c), Plaintiff incorporates paragraphs 1-3 and 8-46 of the CFPB Complaint as though fully stated herein.

## COUNT I—FDCPA CLAIM AGAINST F&G and ARI

64. Plaintiff incorporates all of the above paragraphs as though fully stated here.

65. Defendants acted in concert with one another to commit the actions mentioned in this complaint.

66. ARI is liable for the acts of F&G under regular agency principals.

67. § 1692e provides 16 specific prohibited categories of unlawful conduct preceded by a statement that "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."

68. Defendants violated 1692e(3) by falsely representing that an attorney was meaningfully involved in the lawsuit that it filed against Plaintiff.

69. The Consumer Financial Protection Bureau recently sued F&G alleging that they had represented to consumers that attorneys were behind its lawsuits when in fact attorneys were not meaningfully involved. https://www.consumerfinance.gov/policy-compliance/enforcement/actions/forster-garbus-llp/

70. Plaintiff incorporates paragraphs 1-3 and 8-46 of the CFPB complaint into this complaint.

71. First National Bank of Omaha has stated in an affidavit unequivocally that "the original agreement and document evidencing the creation of [Plaintiff's] Account is lost or destroyed."

72. Despite this, Defendants filed a summary judgment motion in the collection action claiming that they were in possession of the original agreement.

73. This contradicts First National Bank of Omaha's assertion that it the agreement was lost or destroyed.

74. The misidentification of the original creditor as First National Bank of Omaha instead of First Bankcard caused Plaintiff to pursue a course of defending the debt collection attempts by saying that First National Bank of Omaha was not the original creditor.

75. First Bankcard which was a division of First Bank of Omaha was the original creditor.

76. Plaintiff would not have been able to determine if defendants were trying to scam him into paying a debt that they did not own because they provided false information as to the name of the original creditor.

77. On the collection complaint there were names of 4 lawyers underneath the signature line on the collection complaint- Valerie E. Watts, Michael Digiaro, Tess E Gunther and Tarah Jordan.

78. There is what looks like an initialing of the collection complaint above the signature line.

79. The collection complaint gives off the impression that 4 lawyers have reviewed the collection complaint.

80. Upon information and belief, all 4 lawyers did not even see the collection complaint or were made aware of the collection complaint prior to it being filed.

81. Upon information and belief, the one lawyer who did initial the collection complaint did not read every word of the collection complaint, did not participate in the preparation of the collection complaint and was not aware of the affidavit of a First National Bank of

Omaha's employee which stated that there was no original creditor agreement in existence.

82. During Plaintiff's entire relationship with First Bankcard, he was instructed to make payments to First Bankcard.

83. The way the credit card agreement reads is an agreement between Plaintiff and "First Bankcard (a division of First National Bank of Omaha)."

84. Defendants violated 1692g by failing to provide the correct name of the original creditor despite Plaintiff's request for it.

85. And in fact, Defendants provided the false name of Plaintiff's creditor.

For these reasons, plaintiff requests that the Court enter judgment in his favor and against Defendants for:

(1)    Appropriate statutory damages;

(2)    Litigation expenses, attorney's fees and costs of suit;

(3)    Such other or further relief as the Court considers proper.

## CLASS ALLEGATIONS

86. Plaintiff sues under FRCP 23(a); and FRCP 23(b)(3) and on behalf of himself and three classes of individuals.

87. The first class consists of: All individuals with a New York State address where F&G filed a collection action against a consumer seeking to collect a consumer debt or after a date one year before the filing of this action.

88. The second class consists of: All individuals with a New York State address where F&G filed a collection action on behalf of ARI against a consumer seeking to collect a consumer debt or after a date one year before the filing of this action.

89. The third class consists of: All individuals with a New York State address where F&G mailed a letter to a consumer seeking to collect a consumer debt where the original creditor was listed as First National Bank of Omaha when the statements or account agreement listed First Bankcard as the original creditor on or after a date one year before the filing of this action.

90. Numerosity: Each class is so numerous that joinder of all class members is impracticable. Plaintiff is unable to allege at this time the exact number of class members, but Plaintiff believes that there are at a minimum hundreds of Class Members. Plaintiff believes that Defendants' records maintained in the ordinary course of business will readily reveal the exact number of class members.

91. Commonality: This action presents material questions of law and fact common to the Classes. Such questions include but are not limited to-

Is listing First National Bank of Omaha instead of First Bankcard as the original creditor false or deceptive under the FDCPA?

Does F&G meaningfully review Complaints before filing them?

92. Typicality: Plaintiffs' claims are typical of the claims of other members of each Class, as Plaintiff and other members of the Class suffered the same type of harm arising out of Defendants' collection attempts.

93. Adequate Representation: Plaintiff will fairly and adequately represent and protect the interests of each Class. He has retained counsel competent and experienced in complex

class actions. Plaintiff is a member of each Class, Plaintiff has no interest antagonistic to any other members of each Class, and Defendants have no defenses unique to Plaintiff.

94. Predominance: The questions of law or fact common to each Class Members predominate over any questions affecting only individual members. Defendants' conduct can be discovered with no need for participation by individual Class Members. Similarly, this Court's determination of law can be made with no need for participation by individual Class Members. Each Class's claims present no issues of causation or reliance unique to individual class members.

95. Superiority: A class action is superior to all other methods for the fair and efficient adjudication of this controversy. This action presents textbook facts and circumstances for the conduct of a class action to afford each individual Class Member a fair and efficient manner by which to prosecute his or her common claims and, likewise, a fair and efficient manner by which Defendants may defend such claims.

96. Individual prosecution of this matter in separate actions is not desirable as each Class Member's damages likely is in the hundreds of dollars and they will need to incur nearly the same investment to prosecute their individual case as plaintiff here will incur to prosecute this case. The interests of individual Class Members are overwhelmingly best served by the conduct of a class action.

97. Individual litigation of this matter would unduly increase expenses to all parties and prolong efficient adjudication given the expected size of the class.

98. Class membership is readily identifiable from Defendants' records that they maintain such as name, social security number, last known address and other identifying data.

WHEREFORE, Plaintiff requests that the Court certify each class and enter judgment in his favor and the class's favor and against ARI and F&G for:

(1)     Certifying each class identified above;

(2)     Statutory damages for the Plaintiff and all class members per the FDCPA;

(3)     Litigation expenses, attorney's fees and costs of suit;

(4)     Such other or further relief as the Court considers proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury on all issues so triable.

DATED this 27th day of March 2020.

Respectfully submitted,

By: s/ Shimshon Wexler
216 West 104th St., #129
New York, New York 10025
(212) 760-2400
(917) 512-6132 (FAX)
swexleresq@gmail.com

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BUREAU OF CONSUMER FINANCIAL PROTECTION, | Civil Action No. 2:19-cv-2928 |
| Plaintiff, | **COMPLAINT** |
| v. | |
| FORSTER & GARBUS, LLP, | |
| Defendant. | |

Plaintiff, the Bureau of Consumer Financial Protection (Bureau), alleges as follows:

### Introduction

1.      The Bureau brings this action against Forster & Garbus, LLP, a debt-collection law firm, to address its practice of filing collection lawsuits against consumers without meaningful attorney involvement.

2.      Since at least January 2014, Forster & Garbus has relied on non-attorney support staff, automation, and both a cursory and deficient review of account files to attempt to collect more than 99,000 debts that consumers allegedly owe to Forster & Garbus's clients.

3.      Using high-volume litigation tactics, Forster & Garbus collects substantial sums of money from consumers who may not actually owe debts or may not owe debts in the amounts claimed in the collection suits.

## Jurisdiction and Venue

4.      This Court has subject-matter jurisdiction over this action because it presents a federal question, 28 U.S.C. § 1331, and is brought by an agency of the United States, 28 U.S.C. § 1345.

5.      Venue is proper because Forster & Garbus is located, resides, and transacts business in this district. 12 U.S.C. § 5564(f).

## Parties

6.      The Bureau is an agency of the United States charged with regulating the offering and providing of consumer-financial products and services under federal consumer-financial laws, including the Fair Debt Collection Practices Act (FDCPA), 12 U.S.C. § 5491(a), and the Consumer Financial Protection Act of 2010 (CFPA), 12 U.S.C. §§ 5531, 5536(a)(1). The Bureau's regulatory authority extends to persons engaged in the collection of debt related to any consumer-financial product or service. 12 U.S.C. §§ 5481(5), (15)(A)(x). The Bureau has independent litigating authority to address violations of federal consumer-financial laws, including the FDCPA and the CFPA. 12 U.S.C. § 5564(a)-(b); 15 U.S.C. § 1692l(b)(6).

7.      Forster & Garbus is headquartered and maintains its principal place of business at 60 Motor Parkway, Commack, New York 11725. At all times material to this Complaint, Forster & Garbus has regularly collected or attempted to collect,

2

directly or indirectly, consumer debts. Forster & Garbus is therefore a "covered person" under the CFPA and a "debt collector" under the FDCPA. 12 U.S.C. §§ 5481(6), (15)(A)(x); 15 U.S.C. § 1692a(6).

**Facts**

8.     For several decades, Forster & Garbus has collected debts incurred primarily for personal, family, or household purposes. Creditors and debt buyers refer credit-card, auto-loan, student-loan, and home-equity-loan debts, among others, to Forster & Garbus for collection.

9.     Between 2014 and 2016, at any given time, Forster & Garbus employed roughly ten or eleven attorneys, in addition to its two named partners.

10.     Since January 1, 2014, Forster & Garbus's clients have placed more than 136,700 accounts with the firm for collection.

11.     Accounts placed with Forster & Garbus have generally been electronically sent to Forster & Garbus with the data needed to populate Forster & Garbus's templates for communications with consumers, including templates for civil complaints. This data includes the consumer's name, address, and social-security number, the original account number, the date the account was opened, the name of the present creditor, the name of the original creditor, the date of charge-off, the amount of the debt, and the last payment date.

12.    Historically, unless a consumer disputes a debt, Forster & Garbus has generally not conducted any inquiry into the facts surrounding an alleged debt or requested supporting documentation, such as account applications, billing statements, payment histories, the terms and conditions governing an account, or consumer correspondence, from its clients to corroborate purported debts before filing suit. In addition, Forster & Garbus does not conduct reviews for contractual disclaimers related to debt sales, even though many of Forster & Garbus's clients are debt buyers.

### Forster & Garbus engages in mass litigation.

13.    Despite maintaining a small roster of attorneys, Forster & Garbus files suits in New York courts on a massive scale.

14.    In 2014, Forster & Garbus filed collection lawsuits on more than 45,600 consumer accounts; in 2015, it filed collection lawsuits on more than 34,100 consumer accounts; and in 2016, it filed collection lawsuits on more than 20,000 consumer accounts. Forster & Garbus filed more than 99,000 collection lawsuits between 2014 and 2016 (the "Collection Suits").

15.    Forster & Garbus's Collection Suits bore the names and signatures of attorneys despite those attorneys not being meaningfully involved in reviewing the merits of the lawsuits, including conducting any inquiry into the facts, or in preparing the pleadings.

4

**Forster & Garbus relies on non-attorney staff and automated processes to identify accounts for suit and to prepare relevant pleadings.**

16.     Forster & Garbus relies on non-attorney staff and automated processes to identify accounts for potential legal action. Upon placement of an account with Forster & Garbus, the firm's software automatically scrubs the file to determine, among other things, whether the relevant consumer has filed for bankruptcy, is in active military status, or is deceased. The software also assesses whether a statute of limitations bars collection.

17.     Non-attorney support staff then attempt to collect the debt for Forster & Garbus's clients outside of the legal system.

18.     If the non-attorney personnel do not receive a response from a consumer to demands for payment or an account cannot otherwise be resolved, Forster & Garbus's non-attorney personnel will identify the account as "suit-worthy."

19.     Accounts deemed "suit-worthy" are then, again, run against bankruptcy, deceased, and military databases.

20.     After these scrubs are run, files that are not rejected by one of the scrubs are transferred to one of Forster & Garbus's partners, Mark Garbus, for review.

21.     Garbus uses two computer screens to compare a complaint related to a particular account, which Forster & Garbus's software generates by populating a

template with data provided by Forster & Garbus's clients upon account placement, against information on the account, such as account balance and venue. Garbus reviews the information available on the account, any staff notes on the account, and, if available, any documents provided by clients upon account placement; historically, however, Forster & Garbus has not received any original or supporting documentation from its clients before filing suit.

22.     Garbus generally approves for suit more than 90% of the accounts that are presented to him. In his review, he looks for "obvious" reasons to reject a suit, such as a recent payment on the account or the consumer having filed for bankruptcy.

23.     Following Garbus's review and approval, the complaint and summons are printed by the firm's clerical unit and given to an associate attorney for further review and for signature. The associate attorney has the authority to reject the lawsuit.

24.     Forster & Garbus's associate attorney conducts the same type of review as Garbus, examining the content included in the physical complaint against account data provided by the relevant client and any notes and available documents. The associate attorney may also review client affidavits to ensure consistency with the data in Forster & Garbus's system. If the associate attorney approves the account for suit, he or she signs the complaint.

25.     One former associate attorney with Forster & Garbus received and reviewed finished complaints from Forster & Garbus's back office. If the information in the complaint accurately matched the client-supplied information in the firm's computer system, he would sign the complaint. His review of each complaint only took "a minute or two," and he would allocate roughly two minutes to reviewing a debtor's file before approving and signing a complaint.

26.     For the majority of accounts placed by debt buyers and creditors with Forster & Garbus between 2014 and 2016, Forster & Garbus's attorneys signed the complaints that initiated the Collection Suits without reviewing the following types of documentation in any form (electronically or otherwise) related to the purported debts: account applications, billing statements, copies of payments, payment histories, cash-advance check copies, the terms and conditions governing an account, and consumer correspondence.

27.     Forster & Garbus's attorneys do not conduct reviews for warranties or disclaimers of warranties related to debt sales, and did not do so between 2014 and 2016. This means that debt buyers represented by Forster & Garbus may buy and seek to collect debts without any warranty that the debts are valid, accurate, or were owned by the seller. More broadly, this practice suggests that Forster & Garbus is generally unfamiliar with (and fails to conduct significant review of) its clients' contracts.

7

**Forster & Garbus often files suit without
investigating or otherwise verifying the facts it alleges.**

28.     When electronic records are received from a client, Forster & Garbus historically has checked to make sure that the firm has certain pieces of information: (1) the consumer's name, address, and social-security number; (2) name of the present creditor; (3) name of the original creditor; (4) original credit-card-account number; (5) date the account was opened; (6) date of charge off; and (7) account balance—information needed to complete a form complaint. Where supporting documentation has not been provided by one of its clients and a consumer has not requested substantiation of a debt, Forster & Garbus has generally not sought to investigate or otherwise verify information, such as the debt's validity or accuracy, before filing suit. It has not sought payment histories, account applications, billing statements, copies of payments, cash-advance check copies, the terms and conditions governing an account, or consumer correspondence.

29.     In 2014, of the 45,621 accounts on which Forster & Garbus filed suit, Forster & Garbus possessed original or supporting documentation for only 8,958 of those accounts—19.6% of accounts.

30.     In 2015, of the 34,103 accounts on which Forster & Garbus filed suit, Forster & Garbus possessed original or supporting documentation for only 14,965 of those accounts—43.9% of accounts.

31.     In 2016, of the 20,006 accounts on which Forster & Garbus filed suit, Forster & Garbus possessed original or supporting documentation for only 15,113 of those accounts—75.5% of accounts. In 2016, Forster & Garbus began to possess more original or supporting documentation for its accounts before filing suit because clients stopped referring accounts to Forster & Garbus until those clients were able to ensure the firm had sufficient information to permit the firm to sue and obtain judgments under the regulations of the Office of Court Administration.

32.     At least one former associate attorney with Forster & Garbus did not know, when he worked at Forster & Garbus, whether the information supplied by the firm's clients was accurate, and he considered the issue outside of his purview. He also did not review any materials other than what he received from the client before signing a complaint. This attorney signed complaints for 41,508 accounts from January 1, 2014 through December 31, 2016.

33.     Forster & Garbus files debt-collection lawsuits on behalf of debt buyers, including: (1) many of the National Collegiate Student Loan Trusts; (2) Asset Acceptance, LLC; and (3) Midland Funding, LLC.

34.     Asset Acceptance, LLC and Midland Funding, LLC are subsidiaries of Encore Capital Group, Inc. Encore Capital Group, together with Midland Credit Management, Inc. and Asset Acceptance Capital Corp., is one of the nation's largest debt buyers. In September 2015, Midland Funding (as well as Encore

Capital Group, Midland Credit Management, and Asset Acceptance Capital Corp.) stipulated to a Bureau consent order that found that it had attempted to collect debts that it knew, or should have known, were inaccurate or could not legally be enforced based on contractual disclaimers, past practices of debt sellers, or consumer disputes.

35.    In September 2017, the Bureau took action against the 15 National Collegiate Student Loan Trusts and their debt collector, Transworld Systems, Inc., alleging that they sued consumers for private student-loan debt that the companies could not prove was owed or was too old to sue over.

36.    Despite filing lawsuits on behalf of debt buyers, including debt buyers that have been accused of unlawful debt-collection practices such as alleging that consumers owe amounts that they do not actually owe, Forster & Garbus does not conduct reviews for contractual disclaimers related to debt sales, nor did it request and review supporting documentation for many of the accounts on which it filed suit between January 1, 2014 and December 31, 2016.

37.    Forster & Garbus also files lawsuits on behalf of creditors that have been accused of unlawful debt-collection practices, including alleging that consumers owe amounts that they do not actually owe. For example, Forster files lawsuits on behalf of (1) Discover Bank; (2) Citibank, N.A.; and (3) Department Stores National Bank, an affiliate of Citibank, N.A. In July 2015, Discover and

affiliated entities stipulated to a Bureau consent order that found that, among other violations, they had overstated the minimum amount due for certain borrowers by incorrectly including interest on loans that were still in deferment and were not required to be paid. The Bureau also found that Discover acquired a portfolio of defaulted debt from Citibank but failed to comply with the consumer notices required by federal law. Specifically, the Bureau found that the company failed to provide consumers with information about the amount and source of the debt and the consumer's right to contest the debt's validity.

38.     In February 2016, Citibank stipulated to a Bureau consent order that found that Citibank sold credit-card debt with inflated interest rates and failed to forward consumer payments promptly to debt buyers. The same day, Citibank, and other persons, including Department Stores National Bank, also stipulated to a Bureau consent order that found that they had falsified court documents filed in debt-collection cases in New Jersey state courts.

39.     Despite filing lawsuits on behalf of creditors that have been accused of unlawful debt-collection practices, including alleging that consumers owe amounts that they do not actually owe, Forster & Garbus has filed suits against purported debtors on behalf of those creditors without investigating or verifying the summary information that served as the basis for those lawsuits.

40.     Forster & Garbus is generally not sufficiently familiar with its clients' contracts and practices to reasonably rely on the limited summary information that its clients provide. For example, as noted above, Forster & Garbus's attorneys do not conduct reviews for warranties or disclaimers of warranties related to debt sales, and they did not do so between 2014 and 2016. This means that debt buyers represented by Forster & Garbus may buy and seek to collect debts without any warranty that the debts are valid, accurate, or were owned by the seller, and Forster & Garbus would not know.

**Forster & Garbus uses a few designated signers.**

41.     Since 2014, Forster & Garbus has charged between one and five of its associate attorneys with the task of reviewing and signing the vast majority of complaints initiating the Collection Suits.

42.     Forster & Garbus also has those attorneys make court appearances on a regular basis; prepare motions and opposition papers and affidavits in support of those motions and oppositions; conduct discovery; respond to orders to show cause; prepare for trial; engage in settlement negotiations; and review and sign other legal documents related to judgments and collecting on judgments.

43.     Forster & Garbus's associate attorneys generally work 40 to 45 hours a week and manage at least 450 to 500 files, although the designated signers may have fewer cases.

44.    In 2014, Forster & Garbus filed collection suits on 45,621 accounts. A single associate attorney signed complaints for 41,498 of those accounts, in addition to handling other tasks, including frequent court appearances.

45.    In 2015, Forster & Garbus rotated four associate attorneys to serve as the primary signer of complaints at various periods during the year. That year, Forster & Garbus filed suit on 34,103 accounts. One associate attorney signed complaints for 14,586 of those accounts, another associate attorney signed complaints for 12,510 of those accounts, a third associate attorney signed complaints for 5,068 of those accounts, and the fourth associate attorney signed complaints for 1,927 of those accounts, in addition to handling other tasks, including frequent court appearances.

46.    In 2016, Forster & Garbus filed collection suits on 20,006 accounts. A single associate attorney signed complaints for 18,173 of those accounts, in addition to handling other tasks, including frequent court appearances.

**Count I**
**Defendant's Violations of the FDCPA**
**(Filing Deceptive Collection Suits)**

47.    The Bureau incorporates the allegations of paragraphs 1-46 of this Complaint.

48.    The Collection Suits featured the signatures of attorneys, but they were prepared and filed without meaningful attorney involvement.

13

49.     Forster & Garbus falsely represented to consumers that the Collection Suits were from attorneys when, in fact, attorneys were not meaningfully involved in preparing or filing the suits.

50.     Section 807(3) and (10) of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means to collect a debt, including the false representation or implication that any individual is an attorney or that any communication is from an attorney. 15 U.S.C. § 1692e(3), (10).

51.     Forster & Garbus's acts and practices violate § 807(3) and 807(10) of the FDCPA, 15 U.S.C. § 1692e(3), (10).

### Count II
### Defendant's Violations of the CFPA
### (Filing Deceptive Collection Suits)

52.     The Bureau incorporates the allegations of paragraphs 1-46 of this Complaint.

53.     Section 1036(a)(1)(A) of the CFPA prohibits a covered person from committing any act or omission in violation of a federal consumer-financial law. 12 U.S.C. § 5536(a)(1)(A).

54.     Forster & Garbus's FDCPA violations, described above in Count I, therefore constitute violations of § 1036(a)(1)(A) of the CFPA. 12 U.S.C. § 5536(a)(1)(A).

## Count III
## Defendant's Deceptive Acts and Practices in Violation of the CFPA
### (Filing Deceptive Collection Suits)

55.     The Bureau incorporates the allegations of paragraphs 1-46 of this Complaint.

56.     The complaints filed in the Collection Suits represented, directly or indirectly, expressly or by implication, that attorneys were meaningfully involved in preparing and filing the complaints.

57.     In fact, the complaints filed in the Collection Suits were prepared and filed without meaningful attorney involvement.

58.     Forster & Garbus's material misrepresentations, as set forth above, were likely to mislead consumers acting reasonably under the circumstances.

59.     Sections 1031(a) and 1036(a)(1)(B) of the CFPA prohibit a covered person from engaging in any deceptive act or practice. 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

60.      Forster & Garbus's acts and practices constituted deceptive acts or practices in violation of §§ 1031(a) and 1036(a)(1)(B) of the CFPA, 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).

## Demand for Relief

The Bureau requests that the Court:

a.      permanently enjoin Forster & Garbus from committing future violations of the FDCPA and CFPA;

b.      grant additional injunctive relief as the Court may determine to be just and proper;

c.      award damages or other monetary relief against Forster & Garbus;

d.      order Forster & Garbus to pay redress or restitution to consumers harmed by its unlawful conduct;

e.      order Forster & Garbus to disgorge all ill-gotten gains;

f.      impose civil money penalties on Forster & Garbus;

g.      award costs against Forster & Garbus; and

h.      award additional relief as the Court may determine to be just and proper.

Respectfully Submitted,

KRISTEN A. DONOGHUE
*Enforcement Director*

JEFFREY PAUL EHRLICH
*Deputy Enforcement Director*

OWEN P. MARTIKAN
*Assistant Litigation Deputy*

  /s/Barry Reiferson
BARRY REIFERSON (NY Reg. #4343893)
*Enforcement Attorney*
Bureau of Consumer Financial Protection
1700 G Street, NW
Washington, DC 20552
Telephone: 212-328-7020
Facsimile: 202-435-5477
E-mail: Barry.Reiferson@cfpb.gov